28 F.3d 111
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Young-Hung WU, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 93-70001.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 9, 1994.*
Decided June 27, 1994.
 
 1
 Before: FARRIS, O'SCANNLAIN and TROTT, Circuit Judges
 
 
 2
 MEMORANDUM**
 
 
 3
 Young-Hung Wu appeals the decision of the Board of Immigration Appeals affirming the immigration judge's denial of his application for adjustment of status under Sec. 245 of the Immigration and Nationality Act, 8 U.S.C. Sec. 1255. We have jurisdiction pursuant to 8 U.S.C. Sec. 1105a.
 
 
 4
 We review the BIA's factual findings regarding an alien's eligibility for adjustment of status for substantial evidence. See 8 U.S.C. Sec. 1105a(a)(4) (1988); Lee v. INS, 541 F.2d 1383, 1384-86 (9th Cir.1976). The BIA decision can be reversed only if the evidence presented by Wu was such that a reasonable factfinder would have to conclude that he satisfied the requirements of a special immigrant minister. INS v. Elias-Zacarias, 112 S.Ct. 812, 817 (1992) (applying standard in asylum context). Since the BIA adopted the IJ's evidentiary findings as its own, we review the IJ's factual findings to determine whether the BIA's adoption of those findings is supported by substantial evidence. See Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir.1992).
 
 I. Criteria for Adjustment of Status
 
 5
 Section 245 of the INA allows the INS to adjust the status of a nonimmigrant to that of a person admitted for permanent residence. See 8 U.S.C. Sec. 1255(a) (1988). The alien bears the burden of demonstrating that (1) he has applied to an INS District Director for the adjustment, (2) he is eligible to receive an immigrant visa and is admissible to the United States, and (3) an immigrant visa is immediately available to him at the time the application is filed. See id.; Choe v. INS, 11 F.3d 925, 928 (9th Cir.1993). The BIA denied Wu's application for adjustment of status because Wu failed to establish that he was "eligible" to receive an immigrant visa.
 
 II. Special Immigrant Minister
 
 6
 An alien is eligible for (though not necessarily entitled to) a special immigrant visa by establishing that he is a "special immigrant minister" under Sec. 101(a)(27)(C) of the INA, 8 U.S.C. Sec. 1101(a)(27)(C) (1988). See 8 U.S.C. Sec. 1204 (1988). Under the pre-1990 version of the INA, Wu had the burden of showing that at the time he applied for adjustment of status, he was
 
 
 7
 an immigrant who continuously for at least two years immediately preceding the time of his application for admission to the United States has been, and who seeks to enter the United States solely for the purpose of carrying on the vocation of minister of a religious denomination, and whose services are needed by such religious denomination having a bona fide organization in the United States.
 
 
 8
 8 U.S.C. Sec. 1101(a)(27)(C) (1988).
 
 
 9
 Wu argues that the BIA adopted an overly restrictive definition of minister. At the time of Wu's Show Cause hearing, the BIA used the State Department's definition of minister, which provided that
 
 
 10
 [t]he term "minister", as used in section 101(a)(27)(C) of the Act, means a person duly authorized by a recognized religious denomination having a bona fide organization in the United States to conduct religious worship, and to perform other duties usually performed by a regularly ordained pastor or clergyman of such denomination. The term shall not include a lay preacher not authorized to perform the duties usually performed by a regularly ordained pastor or clergyman of the denomination of which he is a member, and shall not include a nun, lay brother, or cantor.
 
 
 11
 Matter of Rhee, 16 I & N Dec. 607, 608-9 (1978) (quoting 1978 version of 22 C.F.R. Sec. 42.25, now codified at 22 C.F.R. Sec. 41.58). The BIA also looks to the ordinary use of the term minister, i.e. the dictionary definition. Id. at 610 (quoting 1961 edition of Webster's Dictionary: "One, usually a priest, who officiates, as at an altar, or administers, as sacraments.").
 
 
 12
 Adoption of the State Department's definition of minister is not unreasonable per se. The problem is that the definition fails to describe the duties of a minister. Wu correctly argues that the BIA erred in holding that regular duties of a minister can not include engaging "in advice and counselling similar to that of a social worker." An ordained pastor who spends part of his time preaching and part of his time counselling his parishioners is a minister under the ordinary meaning of that term. Cf. In the Matter of Z---, 5 I & N Dec. 700, 703 (C.O.1954) (Catholic minister considered a minister even though he taught "in a boarding school where he was required to teach some academic subjects besides teaching religion and doing religious work.")
 
 III. Applicable Time Periods
 
 13
 Even under the broader definition of minister, the BIA did not err in concluding that Wu was not a special immigrant minister. When an application for adjustment of status is renewed at a deportation hearing, the immigration judge and the BIA consider two different two year time periods to determine whether the alien has been "continuously" carrying on the vocation of minister: (1) the two years preceding the alien's initial application for adjustment of status before the District Director and (2) the two years preceding the date of the Show Cause hearing before the immigration judge. See Matter of Lasike, 17 I & N Dec. 445, 447 (1980).
 
 A. June 1982--June 1984
 
 14
 Wu's argument that he worked continuously as a minister for two years prior to June 1984 is not supported by the record. On August 11, 1982 Wu filed an "Application for Change of Nonimmigrant Status" with the INS. On that form, he listed his occupation as a "high school teacher and social worker." No mention was made of his being a minister. Even if ministerial duties are construed to include non-religious counseling, Wu's August 1982 application may properly be considered in determining his status.
 
 B. February 1986--February 1988
 
 15
 Wu contends that from February 1986 to September 1986, he continued to work at Faith Cumberland Presbyterian Church in San Antonio. Thereafter, he claims he worked as a minister at the Chinese Christian Fellowship Church in Hacienda Heights, California until the date of the Show Cause hearing.
 
 
 16
 In addition to his own testimony, Wu introduced a letter from the Hacienda Heights congregation's Chief Executive Officer stating that "Wu has been an extremely active assistant pastor and youth leader of Hacienda Heights Christian Fellowship Church since September of 1986." The letter indicated that while there might be other persons who could minister in limited ways, "Mr. Wu is ... the only person with the proper training, who also speaks both Taiwanese dialect and Mandarin, that we have been able to locate." The letter did not specifically list work duties, and it did not state how much time he devoted to his different functions.
 
 
 17
 The IJ discounted the Hacienda Heights letter. It failed to specify the terms of or actual duties of his office. The IJ also noted that the letter contained language that was virtually identical to that in a September 1985 letter written by the pastor at Wu's San Antonio church.
 
 
 18
 While Wu clearly attempted to comply with the statutory requirement, we can not conclude that evidence presented by Wu is so strong "that no reasonable factfinder could fail to find" that he satisfied the requirements of a special immigrant minister. INS v. Elias-Zacarias, 112 S.Ct. at 817.
 
 
 19
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3